MARY A. DEAN, as Administratrix, etc., of WILLIAM H. DEAN, Deceased, Respondent, *v.* THE THIRD AVENUE RAILROAD COMPANY, Appellant.

*Negligence — street railroad — passenger killed by falling from the step of a street car — duty of a railroad company toward persons about to board its cars temporarily stopped.*

In an action to recover damages for the death of the plaintiff's intestate occasioned by his falling from a street railroad car, which the evidence on behalf of the plaintiff showed had stopped on a curve because of a wagon in front of it, and was suddenly started while the intestate was attempting to board it, the conductor of the car testified as follows: "I saw the man make for the car and the car in motion. I hollered to him to look out for himself. He got on, his two feet on the step, and his hand slipped off the hand rail, and he fell and his head struck the ground first. I saw him jump on the car while it was in motion as it was passing around the starter's booth."

*Held,* that the judge properly charged the jury, in substance, that liability might be imputed to the railroad company if the conductor, in the exercise of reasonable care, ought to have seen whether or not any one was about to get on the car while it was temporarily stopped by reason of the obstruction in front of it.

APPEAL by the defendant, The Third Avenue Railroad Company, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Kings on the 14th day of April, 1898, upon the verdict of a jury for $5,000, and also from an order entered in said clerk's office on the 26th day of April, 1898, denying the defendant's motion for a new trial made upon the minutes.

*Herbert R. Limburger* [*David Calman* and *Henry W. Mayer* with him on the brief], for the appellant.

*William G. Cooke,* for the respondent.

WILLARD BARTLETT, J.:

The plaintiff's intestate, William H. Dean, came to his death as the result of an accident on the defendant's line at the curve thereof in Park Row, in the city of New York, on the afternoon of the 14th day of April, 1897. He was thrown to the ground from the step of a moving car with such force as to inflict injuries from which he died nine days later. According to the testimony introduced in

behalf of the plaintiff, the car had stopped on the curve because there was a wagon in front of it loaded with rolls of paper, which impeded its progress for the time being. While the car was thus stationary, Mr. Dean approached to board it, and had placed one foot on the step, when the car moved on suddenly, and in consequence of such motion he fell off, with the result which has been stated. On the other hand, the evidence in behalf of the defendant tended to show that Mr. Dean attempted to board the car while it was in motion, and that it never came to a stop at all until after the accident. The proof for the plaintiff contains nothing to show that the intention or desire of Mr. Dean to take passage on the car was communicated to the conductor, who was stated by one of the plaintiff's witnesses to have been just going inside the car at the time of the accident; but that the conductor actually did see the plaintiff is shown by his own account of the occurrence as follows : " I remember passing the starter's booth at the time of the accident. I saw the man make for the car and the car in motion. I hollered to him to look out for himself. He got on, his two feet on the step, and his hand slipped off the hand rail, and he fell, and his head struck the ground first. I saw him jump on the car while it was in motion as it was passing around the starter's booth."

Recognizing the rule that a street railway company must give an intending passenger a reasonable time to board a car, counsel for the appellant argue that this rule applies only to regular stopping places or crossings and to cases in which the employees of the defendant have actual notice that there is an intending passenger who is attempting to board the car. In other words, they contend that it was incumbent upon the plaintiff in this case to show that some employee of the defendant had notice of the fact that the decedent desired to board the car.

The learned judge before whom the case was tried took a different view of the law, and instructed the jury, in substance, that liability might be imputed to the defendant if the conductor, in the exercise of reasonable care, ought to have seen whether or not any one was about to get on the car while it was temporarily stopped by reason of the obstruction in front of it. I am strongly inclined to think that he was right. Such seems to have been the view of the obligations of a street railway company, under similar circumstances,

entertained by the General Term of the third department in the case of *Losee* v. *Watervliet Turnpike & R. R. Co.* (63 Hun, 404). There the plaintiff claimed to have been hurt by the starting of the car in which she was a passenger after she had arisen from her seat to leave the car, and the General Term said: "It was for the jury to say not only whether plaintiff was standing up to change her seat or to leave the car, but also *whether the conductor should have seen her in the absence of any signal,* and whether his act in starting the car when she was standing up was or was not wrongful."

In support of the position of the defendant on this branch of the case we are referred to *Georgia Pacific Railway Co.* v. *Robinson* (68 Miss. 643), and *Pitcher* v. *People's Street Railway Co.* (154 Penn. St. 560). In the first case cited the plaintiff succeeded by means of a signal in stopping a steam railway train at night at a point where it was not accustomed to stop, and was in the act of stepping on board when the train suddenly started, severely injuring his knee. The Supreme Court of Mississippi held that he could not recover for the injury if his purpose to take passage was unknown to the conductor and other trainmen. In the Pennsylvania case a street car had stopped to let a passenger pass out from the rear door. The plaintiff's minor son attempted to board the front platform and, as he was about to place his foot upon the step, the car started, throwing him under the wheel. He had given no signal to either the conductor or driver of his purpose to enter the car, and it did not appear that he was seen by either of them. Upon the trial plaintiff was nonsuited and the judgment of nonsuit was affirmed by the Supreme Court. "It was the plain duty of the boy," said Mr. Justice GREEN in this case, "to give some notice of his intent to become a passenger, and until he did so the defendant was not guilty of any negligence in simply not knowing of such intent."

Although I am not prepared to question the correctness of the results reached in these cases in view of the particular facts of each, it seems to me that we can hardly hold that the persons operating street cars in our great cities are not under some obligation to anticipate that intending passengers may get on board or attempt to get on board when the cars are stopped by reason of temporary obstructions or for any other cause, at places where stops are not ordinarily

made. However this may be, the jury in the present case were authorized to take a view of the facts which would bring it within the rule laid down in Mississippi and Pennsylvania; for the passage which we have quoted from the testimony of the conductor, if believed, shows that he was made aware of Mr. Dean's intention and effort to get on board the car. When a witness says that he saw a man "make for" a car, he means that the man was trying to board the car, if he means anything. The jury may have believed him to this extent, and yet have discredited his statement that the car was in motion at the time.

I think the judgment should be affirmed.

Judgment and order unanimously affirmed, with costs.